1  Robert Cain
2  3155 Old Mill Road
3  Brandenburg KY  40108

FILED
DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

10 NOV -8 PM 3:30

4

5                UNITED STATES DISTRICT COURT
6               WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **Robert Cain** | Case #   Western 3:10-CV-632-C |
| Plaintiff, | |
| vs. | **RESPONSE TO DEFENDANTS** |
| | **MOTION TO DISMISS** |
| **American Home Mortgage Services** | |
| Defendant | |

7                                          Date: November 8, 2010

8

9   (1) The Plaintiff, in her Original Petition, plead that Defendant charged false fees as
10      stipulated to Plaintiff as listed on the HUD 1 Settlement Statement, included as Exhibit1.
11      Plaintiff specifically plead that Defendant, at the time of settlement of the contract,
12      Defendant failed to provide documentation to establish that said fees were not included in
13      those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden
14      to be charged to Plaintiff at settlement.

15   (2) Plaintiff stipulated each fee charged with particularity.  Plaintiff calculated the precise
16      amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as
17      stipulated by the Truth In Lending Statement provided by Defendant (see Exhibit 2).
18      Plaintiff specifically alleged that said fees were fraudulent.  Plaintiff alleged that
19      Defendant failed to provide full disclosure by failing to provide documentation to prove
20      that the above fees were authorized by law, that the services alleged provided were
21      necessary, that the amount charged for each service was necessary, and that Defendant
22      did not take an undisclosed markup on said fees.

23   (3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan
24      broker, toward the perpetration of a carefully contrived connivance, provided the
25      amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed
26      yield spread premium.  Said undisclosed yield spread premium is alleged to be in

RESPONSE TO DISMISSAL                                              1 of 11

27  addition to the one percent loan origination fee, charged to Plaintiff, as allowed by law.
28  Plaintiff alleged that said payment to the broker of undisclosed yield spread premium was
29  a predicate act intended to improperly influence loan broker to misrepresent facts to
30  Plaintiff, to give partial disclosure of those facts which would appear favorable to the
31  intent of the loan broker, while failing to give full disclosure of other facts that would not
32  seem favorable to the contract.

33  (4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore,
34  Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's
35  pleading, or, in the alternative, treat Defendant's pleading as a request for more definite
36  statement, in which case, Plaintiff will provide a more definite statement as requested.

37  (5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a
38  frivolous pleading and for failing to speak with candor to the court as Defendant is totally
39  inept or acted with deliberate intent to improperly influence the court with false
40  pleadings.

41  **STATUTE OF LIMITATIONS/ EQUITABLE TOLLING**

42  (6) Plaintiff acted with due diligence by dealing only with licensed professionals.  Plaintiff,
43  by so doing had cause to trust in the proactive statements of Defendants concerning the
44  true value of the property, the condition of the real estate market, and the propriety of the
45  fees charged to Plaintiff at closing.  Defendants acted with deliberate malice toward
46  Plaintiff in that Defendants by making proactive statements to Plaintiff that revealed
47  certain facts which would give a reasonable person of ordinary prudence cause to believe
48  the current loan was properly priced and that said loan was the only loan Plaintiff
49  qualified for while withholding facts which would have given Plaintiff full disclosure.
50  Defendants actively concealed the complete truth from Plaintiff with the intent of
51  defrauding Plaintiff.

52  a.  The Eleventh Circuit stated that "in deciding whether the statute should be tolled,
53      it must be determined whether a 'reasonably diligent plaintiff' would have
54      discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201*
55      *(10th Cir. 1998))*.

56  (7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted
57  immediately with due diligence and engaged professionals to examine into the propriety
58  of the practices engaged in by Defendants.

59          *a.*   The First Circuit. based on the same rationale as the Seventh Circuit, has stated
60                  that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to
61                  investigate in a reasonably diligent manner, . . . his cause of action is deemed to
62                  accrue on the date when he should have discovered the alleged fraud." *Maggio v.*
63                  *Gerard Freezer & Ice Co., 824 F.2d 123, 128 (1st Cir. 1987).*

64    (8) Defendants acted in concert an collusion, one with the other, in an organized scheme

65         wherein, from the beginning, one predicate act after another was committed against

66         Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff

67         by systematically making false claims to Plaintiff in order to induce Plaintiff into entering

68         into an express contract that was based on fraud.  Plaintiff acted in good faith in all things

69         and with due diligence by only dealing with licensed professionals.  In as much as all

70         actors were professionals, duly licensed by the state and federal governments and all

71         governed by the relevant consumer protection laws, Plaintiff had cause to expect good

72         faith and fair dealings from said licensed professionals.

73          a.   "Every contract imposes upon each party a duty of good faith and fair dealing in
74                 its performance and its enforcement." *Price v. Wells Fargo Bank, 213*
75                 *Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [*15] Rest.2d Contracts § 205.*
76                 A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24*
77                 *Cal. 3d. 773. Further. In Jonathan Neil & Associates. Inc. v Jones. (2004) 33*
78                 *Cal. 4th 917.*

79          b.   "A person who provides brokerage services to a borrower in a covered loan
80                 transaction by soliciting lenders or otherwise negotiating a consumer loan
81                 secured by real property, is the fiduciary of the consumer...this fiduciary duty [is
82                 owed] to the consumer regardless of whom else the broker may be acting as an
83                 agent for . . . The fiduciary duty of the broker is to deal with the consumer in
84                 good faith. If the broker knew or should have known that the Borrower will or
85                 has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to
86                 place them in that loan." *(California Department of Real Estate, Section 8:*
87                 *Fiduciary Responsibility, www.dre.ca.gov).*

88    (9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market

89         were finally made public in the popular media.

90          a.   Other courts have indicated the one-year limitations period commences when the
91                 plaintiff is placed on inquiry notice, unless the plaintiff can show the actual
92                 exercise of reasonable diligence to discover the fraud. If the plaintiff can show
93                 the exercise of such diligence, the limitations period begins to run when the
94                 plaintiff actually discovers the facts underlying the alleged fraud. If, however, the
95                 plaintiff cannot show such actual diligence, constructive knowledge of the fraud
96                 is imputed to the plaintiff as of the date of inquiry notice. For example, in *Dodds*
97                 *v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993),* the Second Circuit stated
98                 that "when the circumstances would suggest to an investor of ordinary
99                 intelligence the probability that she has been defrauded, a duty of inquiry arises,
100                and knowledge will be imputed to the investor who does not make such an
101                inquiry." *Id. at 350.* The Dodds court further stated that the doctrine of "equitable
102                tolling will stay the running of the statute of limitations only so long as the

103          plaintiff has exercised reasonable care and diligence in seeking to learn the facts
104          which would disclose [**35] fraud." Id. (internal quotations omitted). *Sterlin v.*
105          *Biomune Sys., 154 F.3d 1191, 1201.*

106     (10)       When Plaintiff became aware of potential fraud by the licensed professionals
107          Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the
108          fraud complained of herein.

109        *a.*   Plaintiff exercised due diligence and the time limitations in the Truth in Lending
110           Act should be tolled so that the intent of the Legislature may be realized. The
111           Seventh Circuit, essentially merging the inquiry notice and reasonable diligence
112           standards into one governing standard, has indicated that a plaintiff is not put on
113           inquiry notice until the plaintiff reasonably should have discovered the fraud. *See*
114           <u>Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997)</u> ("Inquiry
115           notice does not begin to run unless and until the investor is able, with the exercise
116           of reasonable diligence (whether or not actually exercised), to ascertain the
117           information needed to file suit."); *see also* <u>Law v. Medco Research, Inc., 113</u>
118           <u>F.3d 781, 785 (7th Cir. 1997)</u> ("The plaintiff gets a year after he learned or
119           should have learned the facts that he must know to know that he has a claim.").
120           An earlier Seventh Circuit case, however, rejected the plaintiff's argument that
121           "in spite of reasonable diligence, it could not discover the facts underlying the
122           defendants' fraud" and held that the one-year limitations period began to run once
123           the plaintiff was placed on inquiry notice of the possibility of fraud. <u>Whirlpool</u>
124           <u>Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995)</u>. Sterlin
125           v. Biomune Sys., 154 F.3d 1191, 1201.

126     (11)       In the alternative, the acts as alleged against Defendants amount to criminal fraud
127          in that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery,
128          induced Plaintiff into entering into a predatory loan contract wherein Plaintiff was
129          charged amounts not allowed by law. Defendants, in perpetrating the above referenced
130          predicate acts toward their carefully crafted criminal conspiracy, relied on the trust
131          engendered by the laws intended to protect Plaintiff and others similarly situated from
132          just the sort of abuse visited on Plaintiff. Plaintiff alleges a scheme of fraud and,
133          therefore, upon proof at trial, Plaintiff has a right to seek common law equitable
134          recoupment.

135                       ***A. TENDER BY SETOFF***

136     (12)       Plaintiff has alleged a conspiracy on the part of all defendants which gives
137          Plaintiff a claim against all defendants equally as coconspirators, Plaintiff has an
138          equitable right to claim tender by setoff against the claims herein made against
139          defendants.

140

141 **PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY**

142     (13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees

143     improperly charged to Plaintiff at closing in order to induce the originator of the loan to

144     breach his fiduciary duty to Plaintiff. By doing this, they committed common law fraud

145     by making false statements to Plaintiff in order to convince Plaintiff that Plaintiff only

146     qualified for a more expensive loan product than Plaintiff actually qualified for.  Plaintiff

147     is prepared to prove up said claims after discovery, at a trial on the merits.

148     (14) Plaintiff alleged that Defendant(s) made partial disclosure of alleged facts

149     concerning the conditions of the loan which is the basis for the issuance of the security

150     instrument and lien document at issue.  Plaintiff is prepared to prove at trial, after

151     complete discovery that Defendant(s) failed to give full disclosure of facts that, if

152     disclosed would have caused Plaintiff to make a different decision than the one made.

153     (15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived

154     connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full

155     disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full

156     disclosure. Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

157     (16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender.  Said

158     allegations are reiterated below with specificity.  Plaintiff alleged that the original lender

159     sold the security instrument immediately after closing, but failed to transfer the lien

160     document to the purchaser of said security instrument.  Plaintiff is prepared to prove,

161     subsequent to discovery, that the lender, while still holding the security instrument,

162     received consideration and, therefore, could not be harmed rendering the lien

163     unenforceable.

164     (17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained

165     possession of the lien document in order to be able to file an IRS Form 1099a and write

166     the entire amount of the original note off lender's capital gains tax and, thereby, receive

167     consideration a second time.

168     (18) Plaintiff alleged, and is prepared to prove at trial that, the original security

169     instrument, if said instrument still exists, may give the holder a claim against the signator,

170     but have no claim against the property.

171     (19) Plaintiff alleged, and is prepared to prove at trial that,  American Home Mortgage

172     Services , and the attorneys claiming to represent same, have committed fraud by

173  representing to the court that  American Home Mortgage Services  is as real party in
174  interest in the contract of sale and has standing to take said property from defendant when
175  no such claim exists.

176  (20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by
177  claiming standing to express the provisions of the contract of sale and lien, claim to be
178  real parties in interest and, therefore, under the Federal Trade Commission Holder Rule
179  16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

180  ### B. LENDER CHARGED FALSE FEES

181  (21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by
182  the Real Estate Settlement Procedures Act as said fees were simply contrived and not
183  paid to a third party vendor.

184  (22) Lender charged other fees that were a normal part of doing business and should have
185  been included in the finance charge.

186  (23) Below is a listing of the fees charged at settlement.  Neither at settlement, nor at any
187  other time did Lender or Trustee provide documentation to show that the fees herein listed
188  were valid, necessary, reasonable, and proper to charge Petitioner.

| 804 | Credit Report Fee | $18.50 |
| 808 | Underwriting Fee | $515.00 |
| 809 | Flood Certification Fee | $12.00 |
| 810 | Tax Service Fee | $65.00 |
| 811 | Processing Fee | $350.00 |
| 812 | Broker Fee | $2,196.00 |
| 813 | Funding Fee | $50.00 |
| 901 | Interest | $104.20 |
| 1001 | Hazard Insurance | $804.40 |
| 1004 | County Property Taxes | $521.52 |
| 1103 | Title Exam Fee | $450.00 |
| 1108 | Title Insurance | $295.00 |
| 1111 | Premium Tax | $14.75 |
| 1112 | Courier Fee | $20.00 |
| 1201 | Recording Fee | $28.00 |

189  (24) Debtor is unable to determine whether or not the above fees are valid in accordance
190  with the restrictions provided by the various consumer protection laws.  Therefore it was
191  demanded to  please provide;

192  a.  a complete billing from each vendor who provided the above listed services;

193      b.  the complete contact information for each vendor who provided a billed service;

194      c.  clearly stipulate as to the specific service performed;

195      d.  a showing that said service was necessary;

196      e.  a showing that the cost of said service is reasonable;

197      f.  a showing of why said service is not a regular cost of doing business that should
198          rightly be included in the finance charge.

199      (25) The above charges have been disputed and deemed unreasonable until such time as
200      said charges have been demonstrated to be reasonable, necessary, and in accordance with
201      the limitations and restrictions included in any and all laws, rules, and regulations
202      intended to protect the consumer.

203      (26) In the event lender fails to properly document the above charges, borrower will
204      consider same as false charges. The effect of the above amounts that borrower would pay
205      over the life of the note will be an overpayment of $83,311.06. This amount will be
206      reduced by the amount of items above when said items are fully documented.

207                                    *C. RESPA PENALTIES*

208      (27) From a cursory examination of the records, with the few available, the apparent
209      RESPA violations are as follows:

210          a.  Good  Faith Estimate not within limits

211          b.  No HUD-1 Booklet

212          c.  Truth In Lending Statement not within limits compared to Note

213          d.  Truth in Lending Statement not timely presented

214          e.  HUD-1 not presented at least one day before closing

215          f.  No Holder Rule Notice in Note

216          g.  No 1ˢᵗ Payment Letter

217              1.  No signed and dated :

218              2.  Financial Privacy Act Disclosure;

219              3.   Equal Credit Reporting Act Disclosure;

220              4.   notice of right to receive appraisal report;

221              5.   servicing disclosure statement;

222              6.   borrower's Certification of Authorization;

223              7.   notice of credit score;

224              8.   RESPA servicing disclosure letter;

225              9.   loan discount fee disclosure;

226              10. business insurance company arrangement disclosure;

227              11. notice of right to rescind.

228    (28) The courts have held that the borrower does not have to show harm to claim a violation of
229   the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.
230   And, in as much as the courts are directed to assess a penalty of no less than two hundred
231   dollars and no more than two thousand, considering the large number enumerated here, it is
232   reasonable to consider that the court will assess the maximum amount for each violation.

233   (29) Since the courts have held that the penalty for a violation of RESPA accrues at
234   consummation of the note, borrower has calculated that, the number of violations found in a
235   cursory examination of the note, if deducted from the principal, would result in an
236   overpayment on the part of the borrower, over the life of the note, of $186,071.25.

237   (30) If the violation penalty amounts for each of the unsupported fees listed above are
238   included, the amount by which the borrower would be defrauded is $202,045.71

239   (31) Adding in RESPA penalties for all the unsupported settlement fees along with the
240   TILA/Note variance, it appears that lender intended to defraud borrower in the amount of
241   $471,428.02

242                         **MORE DEFINITE STATEMENT**

243   (32) Plaintiff is willing to prepare a more definite statement for the court.  Subsequent to the
244   filing of the original complaint, Plaintiff has made inquiry and found evidence of knowing and

245    deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property and is

246    prepared to file a more definite statement with the court.

247                            **ONGOING CRIMINAL CONSPIRACY**

248    (33) Defendant complains that the document is similar to other documents alleging wrongdoing

249    by banks and lending institutions.  This begs a question, does the wrongdoing of Defendant(s)

250    become somehow less wrong simply because they do it to everyone?  Simply because the lenders

251    are accused by numerous plaintiffs of acting in concert and collusion, one with the other, of the

252    perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended

253    to strip the people of this country of the equity in their property, and thereby, deprive them of

254    their homes, is hardly a valid objection.  It seems Defendant(s), by complaining that others have

255    accused them of the same sorts of fraud should somehow render the claims made here less valid.

256    This also simply demonstrates the extent of their acts of theft and fraud.  Plaintiff suggests,

257    instead of attacking the messenger, the court may consider convening a court of inquiry to

258    examine into the fraudulent practices of the Defendant(s) and encourage the federal government

259    to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending

260    institutions.

261                                       **CONCLUSION**

262    (34) Plaintiff maintains that Defendant(s) motion of dismissal is without merit, and that counsel,

263    in making said claim, has failed to speak with candor with the court.

264

265

266

267    Respectfully Submitted.

268

269    _____

270    **Robert Cain**

271

272

273

274

275

276

277

278

279

## VERIFICATION

280
281
282

283 I, Robert M. Cain, do swear and affirm that all statements made herein are true and accurate, in
284 all respects, to the best of my knowledge.

285 Robert Cain
286 3155 Old Mill Road
287 Brandenburg , KY 40108
288
289
290 *Robert M. Cain*
291 **Robert Cain**
292
293

294 The Person above, who proved to me on the basis of satisfactory evidence to be the person

295 whose name is subscribed to this document and acknowledged to me that he executed the same

296 in his authorized capacity and that by his signature on this instrument who is the person who

297 executed this instrument.

298 I certify under PENALTY OF PERJURY under the laws of this State that the foregoing

299 paragraph is true and correct.

300

301 Witness my hand and official seal.

302

303 *Tury D. Medly*

304 **NOTARY PUBLIC IN AND FOR**                     **Notary Seal**

305 **THE STATE OF KENTUCKY**

306
307
308
309
310
311
312
313
314
315

# CERTIFICATE OF SERVICE

316

317

318 I, Robert M. Cain, do swear and affirm that I have served a signed copy of this Response to
319 Defendants Motion to Dismiss to any and all defendants by way of U.S. regular mail.

320
321
322
323
324 _____
325 Robert  M Cain
326 3155 Old Mill Road
327 Brandenburg  KY 40108
328
329
330
331
332 The Person above, who proved to me on the basis of satisfactory evidence to be the person

333 whose name is subscribed to this document and acknowledged to me that he executed the same

334 in his authorized capacity and that by his signature on this instrument who is the person who

335 executed this instrument.

336 I certify under PENALTY OF PERJURY under the laws of this State that the foregoing

337 paragraph is true and correct.

338

339 Witness my hand and official seal.

340

341 _____        _____

342 NOTARY PUBLIC IN AND FOR                      Notary Seal

343 THE STATE OF KENTUCKY